Filed 11/4/15  In re A.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | C078703 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.H.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD234843) |

S.H., mother of minor A.M., appeals from the juvenile court's orders terminating her parental rights and freeing the minor for adoption.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  She contends the juvenile court erred by not finding that the beneficial parental relationship exception to adoption applied.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

## BACKGROUND

Minor A.M. was born in October 2009. Her parents' relationship was riddled with domestic violence. In May 2013, mother was arrested for charges involving the trafficking of minors, and it appears father was also incarcerated around that time, although the charges are unclear from the record. Upon mother's arrest, she left the minor in the care of the maternal grandmother. Shortly after mother's arrest in May 2013, the minor's paternal half sibling, De.M., and a nonrelated minor, D.A., were detained and placed with minor A.M.'s paternal grandmother.[2] Another of minor's paternal half siblings, Da.M., was detained in January 2014 and also placed with the paternal grandmother.

On June 13, 2014, the Sacramento County Department of Health and Human Services (Department) filed a section 300 petition on behalf of the minor alleging that the minor's maternal aunt (a minor), who was also residing in the maternal grandmother's home, had been physically abused by the maternal grandmother. The petition alleged mother had placed the minor at risk by leaving her in the care of this inappropriate and unsafe caregiver and both parents were incarcerated and unable to provide care for the minor. The petition also alleged that the minor's paternal half siblings had been declared dependents due to domestic violence involving father. The minor was detained in the home of the paternal grandmother. The minor had asked to be placed with half siblings De.M. and Da.M. Father's parental rights to De.M. were terminated in July 2014.

On September 8, 2014, the juvenile court held a combined jurisdiction/disposition hearing, sustained the allegations in the section 300 petition, declared the minor a dependent child of the court, and placed the minor with the paternal grandmother.

---

[2] The nonrelated minor D.A. is De.M.'s maternal half sibling.

2

Mother and father were bypassed for reunification services and a section 366.26 hearing was set.

Mother has remained incarcerated and awaiting sentencing on the child trafficking charges throughout these proceedings. She anticipated she would be receiving a minimum term of 10 years up to a maximum of life in prison. Father had been released but was subsequently arrested again for felony robbery, assault, and probation violations in July 2014.

Prior to the minor's detention, the maternal grandmother brought the minor to visit mother twice a week for up to three hours in length. After detention, the minor was transported to visit with mother in July 2014, and mother had two telephone calls with the minor and sent her two letters in August 2014. Attempts to arrange an August 2014 visit were unsuccessful. The minor was unable to visit mother in September 2014 due to mother being disciplined. Minor visited mother in October 2014 and the visit went well. Both minor and mother stated that they missed each other. The Department was unable to arrange visits for the following months, through no fault of mother.

The social worker's December 29, 2014, report stated that the minor missed mother and would cry out for her when she got in trouble. The five-year-old minor was developmentally, emotionally, and socially on schedule. She could write her name, count to thirty, and identify colors and letters. She appeared happy and healthy and neither the paternal grandmother nor the minor's teacher had any concerns about her behavior. The paternal grandmother was in the process of adopting the minor's half siblings, De.M. and Da.M. The minor was generally adoptable and was also likely to be adopted by the paternal grandmother.

On January 26, 2015, the juvenile court conducted a contested section 366.26 hearing. Mother objected to termination of parental rights and argued the beneficial relationship exception to adoption applied and that legal guardianship with the relative caretaker paternal grandmother was the better option. The parties stipulated to the

3

testimony of the minor as follows: "The child's statement is that she has a strong relationship and bond with her mother. She has visited the mother in custody and has had telephone contact with her while she has been in custody. She . . . doesn't really understand the term adoption, but if she were to be asked who her first preference is as far as if she had a chance to pick where she lives, her mother would be her first choice. And so if mother were to be released tomorrow, she would want to return to the mother." The minor viewed the mother as her mother and the paternal grandmother as her grandmother in terms of her familial relationships.

The juvenile court found that while there was consistent and regular contact between the minor and mother, the section 366.26, subdivision (c)(1)(B)(i) exception to the preference of the permanent plan of adoption was inapplicable. The juvenile court stated that its finding was based on its "review [of] the file and circumstances of the child's age, how long the child has been out of the custody of the parents, the visitation and the relationship," as well as the minor's wishes. Parental rights were terminated and the permanent plan of adoption was selected and implemented.

DISCUSSION

Mother contends that the juvenile court erred by finding that the beneficial parent-child relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(i)) did not apply. We find no error.

At the selection and implementation hearing, the juvenile court must choose one of four alternative permanent plans for a minor; the permanent plan preferred by the Legislature is adoption. If the minor is adoptable, the court must terminate parental rights absent a showing of detriment to the minor. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the juvenile court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)(B).) One such circumstance is when "[t]he parents have maintained regular visitation and contact with the child and the

4

child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The burden is on the parent to make such a showing. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373.)

The phrase "benefit from continuing the relationship" found in the statute means that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated. [¶] . . . The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) The preference for permanent placements, which is afforded by adoption, is a vital component of the statutory scheme. (Cf. *In re Mark V.* (1986) 177 Cal.App.3d 754, 760-762.)

The parties note a split of authority as to whether the substantial evidence or abuse of discretion standard applies in reviewing the juvenile court's rejection of exceptions to adoption and suggest use of the substantial evidence standard in this case. We will employ the substantial evidence standard, although we note "[t]he practical differences between the two standards of review are not significant. '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge.' " (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)

Here, there was no dispute that the minor visited mother regularly. Additionally, by all accounts, the minor enjoys her visits with mother and indicated she would prefer to live with mother if her mother were to be released from prison tomorrow. But mother is

not being released from prison tomorrow. And by the time of the section 366.26 hearing, the minor had been out of mother's care for almost two years, which amounts to a third of her young life. She looks to her paternal grandmother to meet her needs. She appears happy and healthy in the grandmother's care and is developmentally on schedule. While she reportedly misses mother and is sad when visits end, she transitions back to placement without any difficulty.

Such evidence does not compel a finding that the minor's relationship with mother was "sufficiently strong that the child would suffer detriment from its termination" (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418), or that it established a "*compelling reason* for determining that termination would be detrimental to the child" (§ 366.26, subd. (c)(1)(B), italics added). The Legislature has, in effect, found the best interests of the minor to be served by permanence and stability afforded by adoption at this stage in the proceedings. (*In re Jose V.* (1996) 50 Cal.App.4th 1792, 1799.) The juvenile court expressly considered the minor's age, how long she has been out of mother's care, their visitation, the relationship between minor and mother, and the minor's wishes. It had to find an "exceptional situation existed to forego adoption," which it did not. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 576.)

Mother argues that "there is no sound reason for termination of parental rights, as for the minor, the paternal grandmother will continue to be her grandmother and the mother will continue to be known and held by the minor to be her mother." She points out that the minor is in the home of the paternal grandmother and argues that, therefore, "[t]here is no 'tenuous placement' to be balanced 'against the security and the sense of belonging to a new family would confer.' [Citation.] The minor is not joining a new family. There can be no threat to the security and sense of belonging the minor would enjoy in the home of the paternal grandmother."

We disagree. First, the Legislature has not excepted relative guardianship from the preference for adoption. It has not decreed that adoption is somehow less important

for a minor if that minor is placed with a relative, rather than nonrelative caretaker. Second, mother's argument that "[t]here can be no threat to the security and sense of belonging the minor would enjoy in the home of the paternal grandmother" completely disregards the specific facts of this case. The paternal grandmother is in the process of adopting the minor's two half siblings who live in the home with the minor. The minor specifically requested that she be placed with her half siblings, indicating she values her relationship with them. If she were to remain the only child not adopted by paternal grandmother, the minor's sense of stability and permanence, as well as her feelings of belonging in the home and her relationship with her half siblings, could be significantly undermined. In light of the particular facts of this case, not freeing the minor for adoption by her paternal grandmother could actually magnify the instability the Legislature has tried to prevent by making adoption the preferred permanent plan. Therefore, the placement of the minor in the paternal grandmother's home does not support mother's claim that she need not be adopted, but actually contravenes it.

### DISPOSITION

The orders of the juvenile court are affirmed.


/s/
Blease, Acting P. J.

We concur:


/s/
Robie, J.


/s/
Butz, J.

7